IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:12-CR-78-D-1
4:14-CV-196-D

RENALDO KEITRON MEADOWS,           )
                                   )
              Petitioner,          )
                                   )        **MEMORANDUM AND**
        v.                         )        **RECOMMENDATION**
                                   )
UNITED STATES OF AMERICA,          )
                                   )
              Respondent.          )

This case comes before the court on the amended petition or motion (D.E. 57) by pro se

petitioner Renaldo Keitron Meadows ("petitioner") to vacate, set aside, or correct his sentence

pursuant to 28 U.S.C. § 2255 ("§ 2255").[1]  There are two claims at issue.

One alleges ineffective assistance of counsel for failure to file an appeal as instructed

("failure-to-follow-appeal-instruction claim") and is the only claim asserted in the petition that

the court has not yet dismissed.  *See* 23 Nov. 2015 Ord. (D.E. 64) 5-6, 8.[2]  The court referred this

claim to the undersigned magistrate judge for the conduct of an evidentiary hearing and issuance

of a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rules 8(b) and

10 of the Rules Governing Section 2255 Proceedings.  *Id.* at 8.

The other claim alleges ineffective assistance of counsel for failure to consult about

appealing ("failure-to-consult claim").  Petitioner asserted this claim for the first time at the

conclusion of the evidentiary hearing on the failure-to-follow-appeal-instruction claim.  This

second claim is appropriately deemed to be within the scope of the referral not only because it

---

[1] The court is using the terms "petition" and "motion" herein synonymously in referring to requests for relief under §
2255.

[2] Citations to page numbers in all documents in the record are to those assigned by the court's CM/ECF electronic
filing system.

was raised initially at the hearing subject to the referral, but also because addressing it herein would promote judicial efficiency.

Both claims have been fully briefed and are ripe for ruling. For the reasons set forth below, it will be recommended that the two claims, and therefore this case in its entirety, be dismissed.

## BACKGROUND

**I.     PETITIONER'S CONVICTION AND SENTENCE**

On 20 June 2012, petitioner was charged in a four-count indictment (D.E. 1) with the following: (1) possessing with the intent to distribute 28 grams or more of cocaine base (*i.e.*, crack), from on or about 14 September 2011 to 10 November 2011, in violation of 21 U.S.C. § 841(a)(1) (count one); (2) distributing a quantity of cocaine base, on or about 14 September 2011 and 21 September 2011, in violation of 21 U.S.C. § 841(a)(1) (counts two and three, respectively); and (3) distributing a quantity of cocaine base, and aiding and abetting the same, on or about 10 November 2011, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (count four).

On 18 March 2013, petitioner pleaded guilty, without a plea agreement, to all four counts of the indictment. Minute Entry dated 18 Mar. 2013 (D.E. 29). At sentencing on 18 September 2013 (*see* D.E. 40), petitioner was sentenced to 188 months' imprisonment and 4 years' supervised release. (J. (D.E. 44) 2-3). The presentence investigation report ("PSR") (D.E. 33) had determined petitioner's guideline range under the United States Sentencing Guidelines Manual (U.S. Sentencing Comm'n 2012) ("Guidelines") to be 188 to 235 months (PSR ¶ 50) based, in part, on the finding that he was a career offender pursuant to Guidelines § 4B1.1 (PSR ¶ 44). This finding was grounded on prior state felony convictions for controlled substance

offenses (PSR ¶ 12) and fleeing to elude arrest with a motor vehicle (PSR ¶ 19).[3]  The court

adopted this guideline range without objection from either party.  Sentencing Hr'g Tr. (D.E. 79)

("Sent. Tr.") 5:13-22.  Delahoyde had requested at the sentencing hearing a ten-year sentence on

the rationale that the additional time in the guideline range resulting from the career offender

enhancement was not warranted in petitioner's case.  *Id.* at 9:19 to 20:11; *see also* Pet'r's Sent.

Mem. (D.E. 38) 2, 5-6.  Petitioner himself also requested a ten-year sentence.  Sent. Tr. 11:4-7.

Petitioner did not appeal his conviction or sentence.

## II.     THE § 2255 PETITION

Petitioner filed his initial petition (D.E. 50) on 9 October 2014.  The court directed him to

resubmit it on the proper form.  *See* 16 Dec. 2015 Ord. (D.E. 56).  He filed his amended petition

on 3 March 2015.  The claims in the amended petition are the same as those in the original

petition.[4]

In his amended petition, executed under penalty of perjury,[5] petitioner alleges that: (1) he

received ineffective assistance of counsel because his attorney failed to file a notice of appeal

after being instructed to do so (Am. Pet. 4-5; Pet'r's Mem. 6-8) (Ground 1); (2) the enhancement

---

[3] The criteria for career offender status under the Guidelines are as follows:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Guidelines § 4B1.1.

[4] Petitioner filed a memorandum in support of his original petition (D.E. 55), but not one in support of his amended petition.  Because the amended petition asserts the same claims as the original petition, the court will treat the memorandum supporting the original petition as also supporting the amended petition.

[5] *See* 28 U.S.C. § 1746 (providing that in federal cases a writing containing the signed statement in substantially the form "I declare (certify, verify, or state) under penalty of perjury that the foregoing is true and correct" shall be of like force and effect as if sworn); *Matsuda v. Wada*, 101 F. Supp. 2d 1315, 1322-23 (D. Hawaii 4 Aug. 1999) (finding sufficient under 28 U.S.C. § 1746 the statement that "I declare under penalty of perjury that the foregoing is true and correct.").

used to categorize petitioner as a career criminal was invalid (Am. Pet. 5-6) (Ground 2); (3) counsel was ineffective for failing to investigate petitioner's criminal history (Am. Pet. 6-8; Pet'r's Mem. 1-6) (Ground 3); and (4) counsel was ineffective for failing to request discovery, specifically, for failing to procure certain audio and/or video recordings in the government's possession (Am. Pet. 8-9; Pet'r's Mem. 4-5) (Ground 4).

## III. PROCEEDINGS ON THE § 2255 PETITION

On 22 May 2015, the government filed a motion (D.E. 59) to dismiss all claims in the amended petition except for the failure-to-follow-appeal-instruction claim, for which it acknowledged an evidentiary hearing was required. *See United States v. Tidd*, 582 F. App'x 242, 242 (4th Cir. 2014). The court granted the government's motion and dismissed petitioner's claims other than the failure-to-follow-appeal-instruction claim. 23 Nov. 2015 Ord. 5-6, 8. In the order on the government's motion, the court also referred the failure-to-follow-instruction-to-appeal claim to the undersigned magistrate judge for the conduct of an evidentiary hearing and issuance of a memorandum and recommendation. *Id.* at 8.

The court appointed counsel for petitioner for the purpose of the hearing. 3 Dec. 2015 Ord. (D.E. 66); *see also* Notice of Att'y Appearance by Sean P. Vitrano (D.E. 69). The evidentiary hearing was held on 19 January 2016. *See* Minute Entry dated 19 Jan. 2016 (D.E. 76).

At the hearing, petitioner testified on his own behalf, and the government presented the testimony of his trial counsel, William D. Delahoyde. *See generally* § 2255 Evidentiary Hr'g Tr. ("§ 2255 Tr.") (D.E. 80). The court admitted two letters from Delahoyde to petitioner offered by the government without objection from petitioner. *Id.* at 43:18 to 44:7; 25 Nov. 2013 Ltr., Gov.'s Ex. 2 ("Ex. 2"); 1 Oct. 2014 Ltr., Gov.'s Ex. 1 ("Ex. 1").

In closing argument, as referenced, petitioner asserted for the first time his failure-to-consult claim. § 2255 Tr. 47:11 to 48:8. The court granted the parties leave to file supplemental briefing, and each did. *Id.* at 45:7-15; Pet'r's Suppl. Mem. (D.E. 81); Gov.'s Resp. to Pet'r's Suppl. Mem. (D.E. 82).

## APPLICABLE LEGAL PRINCIPLES

### I.    STANDARD OF REVIEW FOR § 2255 PETITIONS

Pursuant to § 2255, a prisoner may seek correction or vacation of a sentence on the grounds that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). A § 2255 petition must be filed within one year from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Federal Rule of Civil Procedure 15 governs amendments to § 2255 petitions. *United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000). If a responsive pleading has been served, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires."

*Id.* "An amendment to a pleading relates back to the date of the original pleading when: . . . the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." *Id.*(c)(1). "[R]elation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Mayle v. Felix*, 545 U.S. 644, 659 (2005) (citations omitted). Relation back is not allowed when "the new claims depend upon events separate in 'both time and type' from the originally raised episodes." *Id.* (citations omitted).

"[T]he burden of proof is on the petitioner to establish his [§ 2255] claim by a preponderance of the evidence. *Albarran-Rivera v. United States*, No. 7:10-CR-95-FL-3, 2013 WL 5570956, at *7 (E.D.N.C. 9 Oct. 2013) (citing *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958) ("Because the proceeding under 28 U.S.C. § 2255 is a civil collateral attack upon the judgment of conviction, the burden of proof is upon petitioner to establish [his claim] by a preponderance of evidence . . . .")). Generally, an evidentiary hearing is required under § 2255 "[u]nless it is clear from the pleadings, files, and records that the prisoner is not entitled to relief." *United State*s *v. Rashaad*, 249 F. App'x 972, 973 (4th Cir. 2007) (citing *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970)).

## II.     INEFFECTIVE ASSISTANCE OF COUNSEL

To state a claim of ineffective assistance of counsel, a petitioner must satisfy a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). First, a petitioner must show that the representation he received fell below an objective standard of reasonableness. *Id*. at 688. The reviewing court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." *Id.* at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance." *Id.* Further, "[a] petitioner seeking post-conviction relief bears a heavy burden to overcome this presumption, and the presumption is not overcome by conclusory allegations." *Hunter v. United States*, Civil No. 1:09cv472, Crim. No. 1:06cr251-3, 2010 WL 2696840, at *3 (W.D.N.C. 6 July 2010).

As to the second prong, a petitioner must show that he was prejudiced by the ineffective assistance. *Strickland*, 466 U.S. at 692. This prong is satisfied where there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The prejudice a defendant is required to show depends on the nature of the alleged ineffective assistance.

The *Strickland* test applies to claims that counsel was constitutionally ineffective for failing to follow the defendant's instruction to file a notice of appeal. Defense counsel has a duty to file an appeal if unequivocally instructed to do so by the defendant. *United States v. Poindexter*, 492 F.3d 263, 268 (4th Cir. 2007). "We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id.* at 478 (citing *Rodriquez v. United States*, 395 U.S. 327 (1969)). "[A] defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice." *Id.* The prejudice prong of *Strickland* does not require a defendant to show that he or she would have been likely to prevail on appeal. *Peguero v. United States*, 526 U.S. 23, 28 (1999). "[W]hen counsel fails to file a requested appeal, a defendant is entitled to resentencing and to an appeal without showing that his appeal would likely have had merit." *Id.*

The *Strickland* test also applies to claims that counsel was constitutionally ineffective for failing to consult with a defendant about appealing. *See Roe v. Flores-Ortega*, 528 U.S. 470, 480

(2000). The issue of whether counsel consulted sufficiently with the defendant arises only if the defendant did not instruct counsel to appeal. *Id.* at 478; *Poindexter*, 492 F.3d at 273. To prove a claim for failure to consult, the petitioner must show that "(1) his attorney had a duty to consult under Flores-Ortega; (2) his attorney failed to fulfill his consultation obligations; and (3) he was prejudiced by his attorney's failure to fulfill these obligations." *Poindexter*, 492 F.3d at 273.

As to the first requirement,

> counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known.

*Flores-Ortega*, 528 U.S. at 480 (citations omitted).

With respect to the second requirement, counsel fails to satisfy his duty to consult if he does not both "advis[e] the defendant about the advantages and disadvantages of taking an appeal, and mak[e] a reasonable effort to discover the defendant's wishes." *Id.* at 478. Thirdly, to show prejudice on a failure-to-consult claim, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484.

While in some instances courts have determined whether a duty to consult exists before determining whether sufficient consultation occurred, in others they have determined first whether sufficient consultation occurred. *See, e.g.*, *United States v. Witherspoon*, 231 F.3d 923, 926 (4th Cir. 2000) ("If counsel has not consulted with his client, the court must then ask whether the failure to consult itself constitutes deficient performance." (citing *Flores-Ortega*, 528 U.S. at 480)); *Mayberry v. United States*, Nos. 5:05-CR-299-FL, 5:07-CV-307-FL, 2008 WL 1902697, at *4 (E.D.N.C. 29 Apr. 2008) (determining counsel failed to consult with his client

before turning to whether the failure to consult was constitutionally deficient); *Poindexter*, 492 F.3d at 273 ("If [defendant's] attorney was not [instructed to file a direct appeal], the court will have to determine if [defendant] met his burden of showing that: (1) his attorney had a duty to consult under Flores-Ortega; (2) his attorney failed to fulfill his consultation obligations; and (3) he was prejudiced by his attorney's failure to fulfill these obligations."). Thus, it appears that the order in which the requirements are addressed is inconsequential.

## III.    DETERMINING CREDIBILITY

In assessing the credibility of witnesses, trial courts consider "variations in demeanor and tone of voice." *Anderson v. City of Bessemer, N.C.*, 470 U.S. 564, 575 (1985). In addition, "[d]ocuments or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." *Id.*; *see also United States v. Marcavage*, 609 F.3d 264, 281 (3rd Cir. 2010) (applying factors in *Anderson* in holding that trial court's crediting of the government's evidence was error on the grounds that "[t]here are simply too many inconsistencies and gaps in the testimony of the government's witnesses, not to mention substantial contradictions between that testimony and other evidence in the record"). Additional considerations can include the witness's motive to lie and the level of detail in the witness's statements. *See, e.g., United States v. Wilson*, 624 F.3d 640, 665 (4th Cir. 2010).

## <u>ANALYSIS</u>

## I.    HEARING TESTIMONY

### A.    Petitioner's Testimony

Petitioner testified as follows: Petitioner hired Delahoyde to represent him in the underlying case. § 2255 Tr. 4:9 to 5:9. Petitioner had no memory of Delahoyde talking to him

about an appeal before sentencing. *Id.* at 23:7-11. Immediately after sentencing, Delahoyde spoke with petitioner in a holding cell. *Id.* at 7:14-25.

At that meeting, petitioner asked Delahoyde about his chances of receiving a shorter, 120-month sentence on appeal (*id.* at 8:11-14), and Delahoyde responded that under the case law he was a career offender and that he did not see any grounds for appeal (*id.* at 23:12-23). Although acknowledging that the court may have informed him about a deadline for filing an appeal, at that time petitioner was unsure whether there was a deadline. *Id.* at 8:17 to 9:1. Petitioner did not recall Delahoyde telling him how long he had to file an appeal. *Id.* at 9:2-5. While there were no specific issues that petitioner knew he wanted to appeal, he was unhappy with the 188-month sentence he had received and asked Delahoyde if he was going to file an appeal for him. *Id.* at 8:11-15; 9:12-23. Petitioner also asked Delahoyde to file an appeal. *Id.* at 20:10-13; 21:13-23; 23:20-21. Delahoyde stated that he would file petitioner's appeal. *Id.* at 8:16. Petitioner did not remember Delahoyde saying he would not represent him on appeal. *Id.* at 10:7-17. As a result of the conversation, petitioner had the understanding that Delahoyde would file an appeal for him. *Id.* at 10:18-22.

Petitioner was then transferred to the Piedmont Regional Jail, from which he telephoned Delahoyde twice. *Id.* at 11:18 to 15:25. During the first telephone call, petitioner asked that specific documents regarding his case be sent to him. *Id.* at 15:9-22. Petitioner made the second telephone call a week or two after sentencing, and in it he asked Delahoyde about his appeal. *Id.* at 11:11 to 12:7. Delahoyde said he had taken care of the appeal. *Id.* at 11:15-17; 12:14 to 13:24. Petitioner did not take any action personally to file an appeal. *Id.* at 13:23 to 14:2.

Petitioner was eventually transferred to a facility in Edgefield, South Carolina, from which he telephoned Delahoyde about ten months after sentencing regarding the status of his

appeal. *Id.* at 14: 3 to 18:6. At that point, Delahoyde told petitioner that he never filed an appeal on his behalf. *Id.* at 16:24-25. Petitioner called the clerk of this court to ask whether an appeal had been filed in his case and was told that no appeal had been filed. *Id.* at 18:10-23. Petitioner would have filed an appeal on his own behalf if he had known Delahoyde had not done so. *Id.* at 19:4-24.

### B. Delahoyde's Testimony

Delahoyde testified as follows: He was hired by petitioner's family and represented him at his arraignment, Rule 11 hearing, and sentencing. *Id.* at 27:7-24. The earliest he would have talked to petitioner about his right to appeal would have been when discussing the plea agreement presented by the government containing an appeal waiver. *Id.* at 28:7-23. Petitioner did not want to give up his appellate rights, and Delahoyde counseled him not to. *Id.* at 28:14-13. Delahoyde had more than one conversation with petitioner regarding his appellate rights. *Id.* at 29:2-20.

A week to ten days prior to sentencing, Delahoyde discussed with petitioner in detail the advantages and disadvantages of filing an appeal. *Id.* at 30:1-7. Delahoyde inquired whether petitioner wanted to pursue an appeal, and petitioner said he was uncertain at that time. *Id.* at 30:8-12. Delahoyde distinctly remembered discussing with petitioner that he had two drug felonies that would qualify him for career offender status, irrespective of his conviction for felony fleeing to elude arrest, which, as noted, was one of the convictions used in the PSR as the basis for the career offender enhancement. *Id.* at 29:19-25; 38:25 to 39:10; *see also* PSR ¶¶ 19, 44.

Although Delahoyde recalled speaking with petitioner in the holding cell, he did not recall "whether the subject of the appeal came up at that time." § 2255 Tr. at 30:15-23. He had

no recollection that petitioner told him to file an appeal or that he had told petitioner that he had not filed an appeal. *Id.* at 32:7-12; 39:16-19. It would have been Delahoyde's practice to note that a client had told him to file an appeal, and the absence of a note to that effect in petitioner's case indicated to him that petitioner did not tell him to appeal.[6] *Id.* at 38:1-10.

Delahoyde has a habit and practice of telling clients that he does not handle appeals. *Id.* at 31:9-12. Delahoyde believed he told petitioner he did not handle appeals because that would have been his practice. *Id.* at 39:16-19; *see also id.* at 30:24 to 31:3. If instructed to file an appeal, it was Delahoyde's practice to file a notice of appeal containing language indicating he was not representing the defendant in the appeal, which he stated expressly he had done, or have the defendant file the notice himself. *Id.* at 39:23 to 40:12. Delahoyde also believed that he might have mentioned to petitioner that the book *Busted by the Feds*, which is widely available in the prison system and petitioner referred to extensively, contained a form notice of appeal. *Id.* at 42:19-24. Delahoyde referred to this publication as a periodical. *Id.* at 42:21. Delahoyde's practice was to inform his clients that, if they wanted to file an appeal, something must be done immediately after sentencing. *Id.* at 42:13 to 43:9.

Delahoyde's client file reflected correspondence between him and petitioner, but Delahoyde does not always make notes of telephone calls. *Id.* at 31:20 to 32:5. Delahoyde has no notes regarding any telephone call with petitioner regarding an appeal. *Id.* at 31:23 to 32:1; 34:15 to 35:3. Delahoyde also had no memory of the telephone calls to which petitioner testified. *Id.* at 34:9 to 35:3. Delahoyde sent petitioner a letter dated 25 November 2013 (Ex. 2)

---

[6] Rule 406 of the Federal Rules of Evidence permits a witness to testify as to his habit or practice. The rule reads:

> Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness.

Fed. R. Evid. Rule 406.

regarding a request from petitioner for his judgment and other documents. *Id.* at 36:14 to 37:6.

Delahoyde sent petitioner a second letter dated 1 October 2014 (Ex. 1) containing, among other

information, the name of an appellate attorney. *Id.* at 40:20 to 41:16.

## II. PETITIONER'S FAILURE-TO-FOLLOW-APPEAL-INSTRUCTION CLAIM

The court finds that petitioner has failed to establish by a preponderance of the evidence

that he unequivocally instructed Delahoyde to file an appeal. Fundamental to the court's

conclusion is that it finds Delahoyde's testimony on the material factual issues to be largely

credible and petitioner's contrary testimony not credible.

As to Delahoyde's testimony, it was matter-of-fact, not adversarial in tone. He evinced

no hostility toward petitioner. His credibility is further supported by his substantial experience

as a criminal defense attorney. After working as an Assistant United States Attorney in this

district for 13 years (*id.* at 26:6-12), Delahoyde has been representing defendants in federal

criminal cases since 2006 (*id.* at 26:17-19).

Delahoyde, of course, made clear in his testimony that he does not represent defendants

in appeals. But he also made clear that he has developed means of accommodating this

practice—having the defendant file the notice of appeal or filing the notice himself but

disclaiming representation of the defendant in the appeal. Thus, Delahoyde has filed notices of

appeal in the past. Filing a notice of appeal on petitioner's behalf would therefore not have been

an unfamiliar task for Delahoyde.

Further, the sentence petitioner received tends to substantiate his competence as a

criminal attorney. The sentence was at the bottom of his guideline range of 188 to 235 months,

which a reasonable attorney in the instant case would view as a favorable outcome. *See* PSR ¶

50; J. 2.

The 1 October 2014 letter from Delahoyde corroborates Delahoyde's testimony that petitioner did not request an appeal immediately after his sentencing hearing. In the letter, Delahoyde refers to a conversation he and petitioner had the previous week, recommends an appellate attorney, and comments on a possible basis for challenging the validity of his conviction for fleeing to elude arrest. It is unclear why Delahoyde would mention a challenge to the fleeing to elude arrest conviction as a possible basis for appeal when he had previously informed petitioner that it was not. However, the letter substantiates that it was not until over a year after petitioner was sentenced that he asked Delahoyde about an appeal. Moreover, there was no notation in Delahoyde's notes that petitioner had asked him to appeal, which, pursuant to his practice, there would have been had petitioner asked him to appeal.

The court has considered Delahoyde's testimony that he may have stated to petitioner that *Busted by the Feds* contains a form notice of appeal. While it is conceivable that such a reference could have been made in response to an inquiry by petitioner about appealing, Delahoyde's testimony indicated that, if he made the reference, it was in the context of petitioner's "refer[ring] extensively" to the publication *See id.* at 42:19-24.

From the standpoint of competence, it is concerning that Delahoyde would suggest use of a form in that book, authored by a nonattorney, that one court has characterized as "questionable." *Manion v. United States*, Nos. 98-0253-CV-W-6, 96-00101-01-W-9-6, 1998 WL 518147, at *4 (W.D. Mo. 21 Aug. 1998). The degree of Delahoyde's familiarity with the publication is itself doubtful because he referred to it as a periodical. Nonetheless, this consideration does not offset the other evidence discussed substantiating Delahoyde's credibility.

Regarding petitioner's testimony, it was not until the § 2255 hearing that petitioner alleged he had instructed Delahoyde to file an appeal in the holding cell immediately after his

sentencing hearing.  His original petition, amended petition, and supporting memorandum contained no detailed factual support for his allegation that Delahoyde failed to follow his instruction to appeal, but instead contained only the bald assertion that he failed to do so.  Am. Pet. 4; Pet'r's Mem. 6-8.

Further, petitioner did not testify on direct examination that he instructed Delahoyde to appeal, only that he asked Delahoyde whether he was going to appeal and Delahoyde said he would.  *See* § 2255 Tr. 8:11-16.  Petitioner's first testimony that he instructed Delahoyde to appeal did not come until cross-examination when counsel for the government posited that he did so in a leading question and petitioner agreed.  *Id.* at 20:10-13.  Petitioner thereafter spoke of asking Delahoyde to file an appeal.  *Id.* at 21:13; 23:20-21.

In addition, the two letters from Delahoyde to petitioner contradict petitioner's testimony. The fact that, as the 10 October 2014 letter indicates, petitioner contacted Delahoyde to seek out a recommendation for an appellate attorney belies petitioner's contention that he believed that Delahoyde was handling his appeal.  Although the letter also appears to propose a possible basis for appeal regarding petitioner's conviction for fleeing to elude arrest, petitioner testified at the § 2255 hearing that he was aware after the sentencing hearing that he was a career offender and that Delahoyde did not see a basis for appeal.  *See id.* at 23:15-19.  Moreover, the other letter, dated 25 November 2013, about two months after the 18 September 2013 meeting, is largely a transmittal letter for documents petitioner had requested.  There is no mention of any appeal.

Further, the fact that petitioner did not contact Delahoyde about his appeal between October 2013 and at least August 2014 discredits his testimony that he ever directed Delahoyde to file an appeal.  A person in custody who believed an appeal had been filed could reasonably be expected to contact his attorney about the status of his appeal over such an extended period of

time.  As evidenced by his testimony, petitioner had the ability while in custody to place telephone calls to Delahoyde's office.

Because petitioner has failed to show by a preponderance of the evidence that he unequivocally directed Delahoyde to file an appeal, his claim of ineffective assistance of counsel for failure to follow an instruction to appeal fails.  It should be accordingly dismissed.

## III.    PETITIONER'S FAILURE-TO-CONSULT CLAIM

An initial issue regarding petitioner's failure-to-consult claim is whether it was tardy.  It was first asserted at the § 2255 hearing on 19 January 2016, over three years after he was sentenced, on 18 September 2013.  Notwithstanding the delay, the court finds that the claim was timely.

The claim is appropriately treated as an amendment to petitioner's initial and amended petitions, both of which, of course, assert the failure-to-follow-appeal-instruction claim.  The failure-to-consult claim and failure-to-follow-appeal-instruction claim involve a "common core of operative facts" that are not different in "time and type."  *Mayle*, 545 U.S. at 659 (internal quotation marks omitted).  The new claim therefore relates back to the date the original petition was filed and is timely.

Petitioner's claim, though, fails on the merits.[7]  Turning first to the issue of whether Delahoyde consulted adequately with petitioner, the two elements are, as noted, whether

---

[7] Because the failure-to-consult claim is inconsistent with, if not completely contrary to, petitioner's testimony at the hearing, as well the representation in his amended petition, that he instructed Delahoyde to file an appeal immediately after his sentencing hearing, the court has considered whether it is barred by the doctrine of judicial estoppel.  This doctrine bars a party from "taking inconsistent positions during the course of litigation."  *United Va. Bank/Seaboard Nat. v. B.F. Saul Real Estate Inv. Trust*, 641 F.2d 185, 190 (4th Cir. 1981).  "The purpose of the doctrine is to prevent a party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process."  *Lowery v. Stovall*, 92 F.3d 219, 223 (4th Cir. 1996).  The Fourth Circuit has determined that the following elements must be met before judicial estoppel may be applied: (1) the party "must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation" and the position must be one of fact; (2) "the prior inconsistent position must have been accepted by the court"; and (3) the party "must have intentionally misled the court to gain unfair advantage."  *Id.* at 223-24 (internal quotation marks omitted).  The court has concluded that the

Delahoyde advised petitioner about the advantages and disadvantages of taking an appeal and whether he made a reasonable effort to discover petitioner's wishes. *See Flores-Ortega*, 528 U.S. at 478. Delahoyde testified credibly, and the court finds, that he advised petitioner about the advantages and disadvantages of appealing, thereby fulfilling this element.

He also satisfied the other element of making a reasonable effort to discover petitioner's wishes. *See id.* While Delahoyde did not expressly ask petitioner after the sentencing hearing whether he wanted to appeal, he did meet with petitioner and thereby provided petitioner an opportunity to tell him that he wanted to appeal. In addition, petitioner was sentenced to the minimum in the guideline range and was advised by the court regarding his appeal rights. Moreover, there were no objections to the PSR at the sentencing hearing resulting in a change in the guideline range or other developments prejudicial to petitioner. Delahoyde had previously discussed with petitioner the advantages and disadvantages of appealing, including specifically the inability to challenge successfully application of the career offender enhancement to him. If notwithstanding these considerations petitioner wanted to appeal, it was reasonable to believe that he would have told Delahoyde so.

Under similar circumstances, another court has determined that counsel had made a reasonable effort to discover the defendant's wishes. In *Johnson v. United States*, 364 F. App'x 972 (6th Cir. 2010), the court found that, before sentencing, counsel advised defendant of the advantages and disadvantages of appealing and told defendant that the next step was to appeal. *Id.* at 976. At sentencing, the court overruled objections to the presentence report and informed the defendant of his right to appeal. *Id.* Contrary to the "better practice," counsel did not consult with the defendant after sentencing. *Id.* at 974, 976. The court nonetheless found that after

doctrine does not apply here because petitioner's previous inconsistent position was taken in the same case in which the subsequent position was taken, not prior litigation, and the court is not accepting petitioner's previous position.

sentencing, the defendant "was fully informed both of his right to appeal and of the slim chance of success on appeal. Under these circumstances, it was reasonable for [counsel] to expect a specific request to appeal from [defendant], if [defendant] in fact wanted to appeal." *Id.* at 976. Here, the sufficiency of Delahoyde's performance is arguably greater than in *Johnson* because, unlike the attorney there, Delahoyde did consult with his client after sentencing. The court concludes that petitioner has not shown by a preponderance of the evidence that Delahoyde failed to adequately consult with him.

Irrespective of whether Delahoyde consulted adequately, petitioner has not shown that Delahoyde had a constitutionally-imposed duty to consult with him about an appeal—that is, petitioner has not shown that a rational defendant would have wanted to appeal or that he had reasonably demonstrated that he was interested in appealing. *See Flores-Ortega*, 528 U.S. at 478.

Regarding whether a rational defendant would have wanted to appeal, the record shows that a challenge based on the failure of his flee-to-elude-arrest conviction to qualify as one of the two predicate offenses needed for career offender status would have been feckless. Indeed, the court held precisely this in its order denying Grounds 2 to 4 in petitioner's amended petition:

> Next, Meadows asserts that his counsel was ineffective by failing to argue that Meadow's conviction for "[f]leeing to [e]lude [a]rrest [w]ith a [m]otor [v]ehicle 2 [a]ggravating [f]actors" was not a "crime of violence" under U.S.S.G. § 4B1.2(a). *See* [D.E. 57] 6; PSR ¶ 19. Counsel, however, reasonably concluded that the conviction did qualify as a "crime of violence." *See*, *e.g.*, [D.E. 55-1] 27; N.C. Gen. Stat. § 20-141.5(b); *United States v. Warren*, 383 F. App'x 360, 362-63 (4th Cir. 2010) (per curiam) (unpublished). Thus, Meadows has failed to plausibly allege deficient performance. *See Strickland*, 466 U.S. at 687-91. Alternatively, Meadows has failed to allege prejudice, particularly in light of his two other "controlled substance offense[s]" under U.S.S.G. § 4B1.2(b). *See* PSR ¶¶ 12, 15. Simply put, even if counsel successfully argued that Meadows's fleeing-to-elude conviction was not a "crime of violence" under the Guidelines, Meadows still would have been a career offender. Thus, the claim fails.

23 Nov. 2015 Ord. 6.  Petitioner has presented no other nonfrivolous claims that would have been available to him on appeal.

Petitioner also has not shown that he reasonably demonstrated to Delahoyde that he was interested in appealing.  Petitioner did not plead guilty pursuant to a plea agreement, which would have contained an appeal waiver, in order to preserve his right to appeal.  However, it was after petitioner pleaded guilty that Delahoyde informed petitioner of the advantages and disadvantages of appealing, and petitioner merely indicated that he wanted to think about it.  Then after the sentencing hearing and being informed by the court that he had 14 days in which to file a notice of appeal (*see* Sent. Tr. 19:12-17), petitioner did not inform Delahoyde that he wanted to appeal or that he was interested in appealing.  Courts have required more specific demonstrations to find that a defendant is interested in appealing.  *See*, *e.g.*, *United States v. Pham*, 722 F.3d 320, 322, 326-27 (5th Cir. 2013) (finding a non-English speaking defendant reasonably demonstrated his interest in appealing when he was visibly upset after sentencing and "brought up that he was concerned about getting 60 months and wanted to do something to get less time"); *United States v. Malone*, 442 F. App'x 864, 867 (4th Cir. 2011) (concluding defendant reasonably demonstrated an interest in appealing when he said after sentencing that he wanted an appeal and his son and daughter-in-law spoke with counsel about defendant's desire to appeal); *Bostick v. Stevenson*, 589 F.3d 160, (4th Cir. 2009) (finding a duty to consult where "after hearing [defendant] tell his daughter that he would appeal, counsel admit[ted] that he never talked to [defendant] about [an appeal]"); *Mayberry*, 2008 WL 1902697, at *4 (finding attorney failed to consult where defendant asked before trial if they would appeal if he was found guilty; defendant's wife asked about an appeal after trial; the issue of an appeal was raised in a three-way phone conversation between defendant, defendant's wife, and the attorney; and after

sentencing defendant was distraught and expressed dissatisfaction with his sentence). The court concludes that petitioner has not shown by a preponderance of the evidence that Delahoyde had a constitutionally-imposed duty to consult with petitioner about appealing.

Lastly, even if Delahoyde were deemed not to have complied with a constitutionally-imposed duty to consult with petitioner, petitioner has not demonstrated prejudice from such failure. Specifically, given the lack of demonstrated grounds for an appeal and petitioner's failure to express interest in appealing, petitioner has not shown by a preponderance of the evidence that there is a reasonable probability that, but for Delahoyde's posited deficient failure to consult, he would have timely appealed. *See Flores-Ortega*, 528 U.S. at 484.

Petitioner has thus failed to satisfy any of the elements of his failure-to-consult claim. The claim should accordingly be dismissed.

## **CONCLUSION**

For the foregoing reasons, IT IS RECOMMENDED that both petitioner's failure to appeal and failure-to-consult claims, and therefore this case in its entirety, be DISMISSED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 23 May 2017 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

Any response to objections shall be filed within 14 days after the filing of the objections.

SO ORDERED, this 9th day of May 2017.

James E. Gates
United States Magistrate Judge