IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:12-CR-78-D

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| RENALDO KEITRON MEADOWS, ) | |
| ) | |
| Defendant. ) | |

On July 28, 2020, Renaldo Keitron Meadows ("Meadows" or "defendant") moved for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) and filed a memorandum and records in support [D.E. 115, 118]. On October 30, 2020, the United States responded in opposition and filed records in support [D.E. 121]. As explained below, the court denies Meadows's motion.

I.

On March 18, 2013, without a plea agreement, Meadows pleaded guilty to possession with intent to distribute 28 grams or more of cocaine base (crack) (count one), distribution of a quantity of cocaine base (crack) (counts two and three), and distribution of a quantity of cocaine base (crack) and aiding and abetting (count four). See [D.E. 1, 29]. On September 18, 2013, the court held a sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See [D.E. 40, 44, 45]; Fed. R. Crim. P. 32(i)(3)(A)–(B). The court calculated Meadows's total offense level to be 31, his criminal history category to be VI, and his advisory guideline range to be

188 to 235 months' imprisonment. See [D.E. 45] 1. After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Meadows to 188 months' imprisonment on each count to run concurrently. See [D.E. 44] 2.

On October 9, 2014, Meadows moved under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence [D.E. 50, 55]. On December 18, 2014, Meadows filed a motion to reduce his sentence under 18 U.S.C. § 3582(c)(2), U.S.S.G. § 1B1.10, and Amendment 782 to the Sentencing Guidelines [D.E. 54]. On March 3, 2015, Meadows filed an amended motion to vacate his sentence under section 2255 [D.E. 57]. On August 19, 2015, Meadows moved to amend his section 2255 motion [D.E. 63]. On November 23, 2015, the court dismissed all of Meadows's 2255 claims except his claim that his counsel failed to file a notice of appeal, denied Meadows's motion under section 3582(c), and denied Meadows's motion to amend [D.E. 64]. On May 9, 2017, United States Magistrate Judge James E. Gates issued a memorandum and recommendation ("M&R") recommending that the court dismiss Meadows's remaining section 2255 claims [D.E. 85]. On June 27, 2017, the court adopted the M&R and dismissed Meadows's remaining claims [D.E. 88]. On September 1, 2017, Meadows filed a motion for reconsideration [D.E. 91]. On November 20, 2017, the court denied the motion and denied a certificate of appealability [D.E. 92]. On December 15, 2017, Meadows appealed [D.E. 94]. On February 20, 2018, the United States Court of Appeals for the Fourth Circuit dismissed Meadows's appeal. See United States v. Meadows, 712 F. App'x 267, 268 (4th Cir. 2018) (per curiam) (unpublished); [D.E. 97]; [D.E. 98].

On May 23, 2019, Meadows again moved under section 2255 to vacate, set aside, or correct his sentence [D.E. 101]. On January 22, 2021, the court dismissed Meadows's motion without prejudice because it was successive [D.E. 123].

2

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another

3

extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—

   (I) suffering from a serious physical or medical condition,

   (II) suffering from a serious functional or cognitive impairment, or

   (III) experiencing deteriorating physical or mental health because of the aging process,

   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

   (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

   (C) Family Circumstances.—

   (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

   (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

4

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See id. at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., id. at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020);

---

> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

5

United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

As for Meadows's request for compassionate release, Meadows contends that he has exhausted his administrative remedies. See [D.E. 115] 2; [D.E. 118] 2. On June 5, 2020, Meadows submitted a request for compassionate release to the BOP, which the BOP denied on June 18, 2020. See [D.E. 118] 13–14; [D.E. 115-3]. On June 22, 2020, Meadows submitted a second request, which the BOP also denied. See [D.E. 115-3]. On July 7, 2020, Meadows submitted an informal complaint to BOP staff, which was marked "not resolved" on July 15 and 21, 2020. See [D.E. 118] 15. On July 23, 2020, Meadows submitted a request for administrative remedy. See id. at 16. Notably, the government has not invoked section 3582's exhaustion requirement. See United States v. Alam, 960 F.3d 831, 833–34 (6th Cir. 2020).[2] Accordingly, the court addresses Meadows's claim on the merits.

Meadows seeks compassionate release pursuant to section 3582(c)(1)(A). In support of his request, Meadows cites the COVID-19 pandemic, and his race, history of asthma, hypertension, pre-diabetes, and obesity. See [D.E. 115] 1, 17; [D.E. 115-4]; [D.E. 118] 3–4, 17–34. Meadows also cites the conditions at FCC Butner, his rehabilitation efforts, and his release plan. See [D.E. 115] 1, 4–8; [D.E.118] 4–7, 35–38.

As for the medical condition of the defendant policy statement, the policy statement requires that the defendant is "suffering from a serious physical or medical condition . . . from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). While Meadows states that he

---

[2] The Fourth Circuit has not addressed whether section 3582's exhaustion requirement is a jurisdictional or claims-processing requirement. The court assumes without deciding that the requirement is a claims-processing rule, and that the government must "properly invoke" the rule for this court to enforce it. See Alam, 960 F.3d at 833–34.

6

suffers from a history of asthma, hypertension, pre-diabetes, and obesity, he has not demonstrated that he is not going to recover from these conditions or that they cannot be treated while Meadows serves his sentence. Accordingly, reducing Meadows's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Meadows's health conditions, rehabilitation efforts, and release plan are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Even so, the section 3553(a) factors counsel against reducing Meadows's sentence. See United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Meadows is 37 years old and engaged in very serious criminal behavior from 2011 to 2012. See PSR ¶¶ 6–8. Meadows trafficked cocaine base and marijuana, at one point fleeing on foot during a controlled buy. See id. Moreover, Meadows is a career offender with an extensive history of drug trafficking convictions, including selling cocaine (two counts), possession with the intent to sell and deliver cocaine (two counts), and trafficking in cocaine by possession. See id. at ¶¶ 10–20. Meadows also has a history of violent vehicle offenses, including convictions for reckless driving to endanger (two counts), assault on a female, and fleeing to elude arrest with a motor vehicle with two aggravating factors. See id. In particular, Meadows was involved in a serious car accident where two children were injured, one suffering a broken collar bone and the other requiring

7

her arm to be amputated. See id. at ¶ 17. When a couple stopped to help, Meadows punched them in the face while trying to steal their vehicle, fled on foot, and was tased to the ground by police officers, resulting in convictions for assault on a female and resisting a public officer. See id. Nonetheless, Meadows has taken some positive steps while incarcerated. See [D.E. 118] 6, 35–38. The court also has considered Meadows's exposure to COVID-19, his health conditions, his rehabilitation efforts, and his release plan. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011). Having considered the entire record, the steps that the BOP has taken to address COVID-19 and treat Meadows, the section 3553(a) factors, Meadows's arguments, the government's persuasive response, and the need to punish Meadows for his serious criminal behavior, to incapacitate Meadows, to promote respect for the law, to deter others, and to protect society, the court declines to grant Meadows's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished).

As for Meadows's request for home confinement, Meadows seeks relief under the CARES Act. See [D.E. 115]. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). As such, the court dismisses Meadows's request for home confinement.

8

II.

In sum, the court DENIES Meadows's motion for compassionate release [D.E. 115], and DISMISSES Meadows's request for home confinement.

SO ORDERED. This _2_ day of February 2021.

                                          JAMES C. DEVER III
                                          United States District Judge